IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| v. | : CRIMINAL NO. 14-158 |
| ZUNED SUNESRA | : |

## MOTION FOR PRETRIAL RELEASE ON CONDITIONS

AND NOW, comes the Defendant, Zuned Sunesra, through his counsel, and respectfully moves for pretrial release on a combination of conditions pursuant to Title 18, United States Code, Section 3142(a)(2), (c)(1)(A), (c)(1)(B) and (g) because:

(a) the government has not proved by a preponderance of the evidence that defendant Zuned Sunesra will flee and there is a no other basis for moving to detain the defendant pursuant to 18 U.S.C. §3142(f); and

(b) in any event, the government has not proved by a preponderance of evidence that a combination of conditions will not reasonably assure the appearance of the defendant as required.

In support for his Motion, defendant Zuned Sunesra avers as follows:

1. The superseding indictment alleges a non-violent conspiracy to export from India to the United States prescription drugs without a prescription.

2. The indictment alleges no exports from India to the United States of narcotic controlled substances.

3. The nonnarcotic controlled substances which the indictment alleges were exported without a prescription were Schedule IV controlled substances, which the Controlled Substances Act defines as drugs that have "a low potential for abuse relative to the drugs . . . in Schedule III" and have "a current assigned medical use" which "may lead to limited physical

dependence or psychological dependence relative to the drugs . . . in Schedule III." 21 U.S.C. §812(B)(4).

4. The offenses charged do not involve a crime of violence, terrorism, minor victims, or any controlled substances other than the Schedule IV nonnarcotic controlled substances.

5. The evidence in the case is not strong as to defendant Zuned Sunesra.

   a. Count 1 of the superseding indictment alleges a conspiracy in violation of 18 U.S.C. §371, the object of which was allegedly : (A) to defraud the United States Food and Drug Administration ("FDA") by mislabeling prescription drugs introduced into interstate commerce; (B) to introduce mislabeled prescription drugs into interstate commerce; and (C) to fraudulently import into the United States merchandise contrary to the law. (Superseding Indictment, "SI," at ¶ 94).

   b. With respect to the first alleged object of the conspiracy regarding the alleged obstruction of the FDA, the government has not offered evidence of false statements or misrepresentations to the FDA, or any omissions in any filing before the FDA. With respect to the second alleged object of the conspiracy, the superseding indictment does not allege the defendants introduced adulterated and misbranded drugs into interstate commerce in the literal sense. Indeed, the superseding indictment concedes that the drugs were manufactured for the Indian market by Indian pharmaceutical companies and contained the same active ingredients as FDA approved brand named drugs. (SI at ¶ 20). The superseding indictment instead alleges that the drugs were misbranded and adulterated as a matter of law because the FDA had not approved the drugs manufactured in India, and defendants sold these drugs without a prescription. (SI at ¶¶ 10-12). Finally, with respect to the third alleged object of the conspiracy, the government has

not offered any evidence of a fraudulent importation of merchandise into the United States by the defendants. First, the evidence shows that the defendant did not import any merchandise into the United States. At most, they exported medicines approved by the Indian FDA from India to the United States. Their customers were the ones who imported the medicines into the United States. Second, the government has not offered any evidence of fraudulent misrepresentations in connection with the exports. Each and every customs declaration accurately described the medicines shipped.

    c.    Counts 2 through 9 allege substantive violations of the federal Food, Drug and Cosmetic Act in violation of 21 U.S.C §§331(a) and 333(a)(2). These counts echo the general rule that prescription drugs are legally misbranded if distributed without a prescription. (SI at ¶ 108). However, 21 U.S.C. §333(a)(2) requires the government to prove that a defendant intended to defraud or mislead the FDA. (SI at ¶109). The government has not offered evidence that a defendant made false statements or misled the U.S. FDA by any omission in an affirmative statement.

    d.    Count Ten alleges a conspiracy to commit mail and wire fraud in violation of 18 U.S.C. §1349. The superseding indictment appears to assert that the defendants made false and misleading statements on various websites to induce individuals to purchase prescription drugs approved by the FDA for sale when in fact the drugs were not approved for sale by the FDA because they were legally misbranded. (SI at ¶118.a). The superseding indictment further alleges that the defendants defrauded customers by falsely representing on their websites that: (i) they sold generic drugs that had been produced in facilities designed and maintained as per FDA and World Health Organization ("WHO") specifications, (ii) they carried generics compatible in strength to brand name drugs, (iii) they carried brand name drugs, and (iv) they required a

prescription. (SI at ¶¶118.b-e, 120). Count Ten further alleges that the defendants mislead credit card processing companies in addition to prescription drug customers. The superseding indictment asserts that the defendants used an intermediary payment company called mygiftcard.biz to conceal from payment processors the fact that their card holders were buying prescription drugs from India. (SI at ¶¶119-120).

   e. The evidence offered by the government demonstrates that the websites from which customers and undercover government agents purchased drugs accurately described the items purchased. The evidence further shows that the items mailed to the United States bore labels which accurately described the contents of the packages. In short, while the drugs may have been "legally" misbranded under part of the government's Food, Drug and Cosmetic Act theory (Counts 2 through 9 of the superseding indictment), in the sense that some medicines may have been distributed without a prescription, the medicines were not misbranded as a matter of fact, and therefore likely could not have deceived the website customers.

   f. As was noted above, Count 10 also asserts that the defendants conspired to commit mail and wire fraud against credit card processors. The superseding indictment appears to fail, however, to allege a cognizable mail or wire fraud as to this class of putative victims. The mail and wire fraud conspiracy provision requires the government to prove an agreement to deprive a person of property. But the superseding indictment does not allege either that the defendants agreed to deprive credit card processors of money or even that a credit card processor was not paid. The "deprivation of property" prong of the mail and wire fraud conspiracy allegation appears to fail as a matter of law.

   g. Putting aside the question whether the drugs sent through the mail were mislabeled as a matter of fact, and whether the credit card processors suffered a harm recognized

by the mail and wire fraud conspiracy statute, the government has failed to offer evidence of an agreement by defendant Zuned Sunesra to defraud customers or credit card processors.

  h. Count 11 alleges a conspiracy to import Schedule IV nonnarcotic controlled substances into the United States in violation of 21 U.S.C. §§952(b), 960(a)(1) and (b)(6), and 963. The conspiracy and penalty provisions set forth in sections 963 and 960(a)(1) and (b)(6) derive from a violation of §952(b). Section 952(b) prohibits the importation of nonnarcotic controlled substances "unless such nonnarcotic controlled substance is imported for medical, scientific, or other legitimate uses." This count appears to fail as a matter of law because the superseding indictment fails to allege that any defendant imported nonnarcotic controlled substances into the United States. The superseding indictment instead alleges, accurately, that the defendants "exported from India into the United States." (SI at ¶37). Putting aside this legal flaw in the allegations, the evidence appears to show that the defendants exported drugs from India for medical purposes—an exception to the prohibition against imports.

  i. Counts 12 to 14 allege substantive violations of the prohibition against importing nonnarcotic controlled substances. 21 U.S.C. §§952(b), 960 (a)(1) and (b)(6). These allegations appear to fail as a matter of law and evidence for the reasons set forth above.

  j. Counts 15 to 17 allege that the defendants distributed nonnarcotic Schedule IV controlled substances in violation of 21 U.S.C. §§841(a)(1) and (b)(2). The alleged transactions—all of which were induced by an undercover agent—hinge, in part ,on the absence of a prescription. The government has not offered evidence to show that defendant Zuned Sunesra knew about these transactions, much less that he knew they occurred without a prescription.

k. Count 18 alleges a money laundering conspiracy in violation of 18 U.S.C. §1956(h), the object of which was to promote "smuggling, narcotics distribution, mail fraud, and wire fraud" in violation of 18 U.S.C. §1956(a)(2)(A). (SI at ¶132). The defendant presumes that the word "smuggling" refers to the unlawful importation of nonnarcotic controlled substances into the United States in violation of 21 U.S.C. §952(b). As set forth above, this allegation will likely fail as a matter of law and fact. Count 18 also alleges narcotics distribution as a predicate act. The government offered no evidence to support this allegation. Indeed, the superseding indictment alleges, at most, the distribution of nonnarcotic controlled substances. In any event, the allegation of nonnarcotic drug distribution will likely fail for the reasons set forth above. Finally, the mail and wire fraud predicate acts will likely fail because the evidence offered by the government shows that: (i) the websites accurately described each customer's order, (ii) the packages accurately described what they contained, (iii) the credit card processing companies did not suffer a loss of any property, and (iv) the defendants did not intend to cause the credit card companies to lose money in any event.

6. The government has already produced 70,000 documents, and has indicated that it will shortly produce an additional 600,000 emails. This case presents nuanced questions of knowledge, intent, willfulness and misrepresentations. It requires careful scrutiny of documents. The defendant's detention limits his ability to review the evidence and to communicate with his counsel. The Northeast Ohio Correctional Center ("NEOCC"), where defendant is currently being held, has only one laptop computer to which the defendant has limited access. Additionally, the available computer lacks software required to view some of the file types produced by the government to date. He cannot communicate with his counsel through CorrLinks because the NEOCC does not have that capacity. These circumstances currently

require his counsel to print out each document on paper and then to drive more than one hour from Pittsburgh to the NEOCC in Ohio to review the evidence with him, which entails a time-consuming and costly exercise.

7. It is difficult to predict with any certainty the sentence defendant Zuned Sunesra potentially faces because of the substantial evidentiary and legal questions raised by the superseding indictment. These weaknesses, set forth above, diminish any incentive defendant Zuned Sunesra might have to flee.

8. Defendant Zuned Sunesra is an Indian national who attempted to enter the United States on a valid visa prior to his arrest in this matter. The government has seized his passport. He has no lawful means by which to flee the United States.

9. While defendant Zuned Sunesra does not have ties to the Western District of Pennsylvania, he has a cousin in Breinigsville, Pennsylvania, which lies approximately 11 miles southwest of Allentown in Lehigh County. The Shah family lives at 1117 Sparrow Way, Breinigsville, PA 18031. They have offered to welcome defendant Zuned Sunesra into their home until his legal proceedings conclude. They have a landline that would permit electronic monitoring and have agreed to cooperate with any other conditions set by the Court. Sikander Shah, defendant Zuned Sunesra's cousin, holds a Green Card and manages a gas station. He hopes to attain U.S. citizenship someday. He will ensure that defendant Zuned Sunesra appears as required, and has every incentive to abide by U.S. law. He would fall under a cloud of suspicion if defendant Zuned Sunesra were to flee, and his hope for U.S. citizenship would be jeopardized. His wife, Smita Shah, is a United States Citizen. She manages a Dunkin Doughnuts store. Their daughter, Sumera Shah, is also a United States Citizen. She works part time at Dunkin Doughnuts. Their son-in-law, Jasjeet Singh, holds a Green Card and works as an

Assistant Captain in the Merchant Navy. Again he, like his father-in-law, has an incentive to ensure that defendant Zuned Sunesra appears as required. His hope for U.S. citizenship would be jeopardized were defendant Zuned Sunesra to flee.

10. In the alternative, defendant Zuned Sunesra could rent an apartment with a telephone landline to permit twenty-four hour electronic monitoring via an ankle bracelet. He would report as directed by the United States Probation Office in the Western District of Pennsylvania. Defendant also stands ready to hire a security guard company to monitor him on a 24-hour basis if deemed necessary by the Court.

11. A detainer for defendant Zuned Sunesra has been lodged by the Immigration and Naturalization Service ("INS") on the ground that the defendant has been charged with a violation of the Controlled Substances Act. For the reasons set forth above, the evidence offered by the government does not show that defendant Zuned Sunesra knew about the three sales to an undercover agent of nonnarcotic Schedule IV controlled substances as charged in Counts 15-17. While the Court does not presently have jurisdiction over the INS and its detainer, the evidence as to defendant Zuned Sunesra on these counts appears weak and ripe for consideration by the INS upon the release of the defendant to the INS from the custody of the U.S. Marshals.

12. Defendant Zuned Sunesra is not charged with having committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act. If convicted for the distribution of a nonnarcotic controlled substance, the defendant would face a maximum penalty of only five years. 21 U.S.C. §841(b)(1)(E)(2). Therefore, no rebuttable presumption exists that no condition or combination of conditions will reasonably assure the appearance of the defendant as required. 18 U.S.C. §3142(e)(3)(A).

13. The only basis on which the government may seek pretrial detention is that the case involves a serious risk that defendant Zuned Sunesra will flee. 18 U.S.C. §3142(f)(2)(A).

14. The Court must consider the following factors pursuant to 18 U.S.C. §3142(g):

   a. The nature and circumstances of the offense charged. This case does not concern a crime of violence or a crime of terrorism. It also does not involve a minor victim, firearm, explosive or destructive device. While it does concern a controlled substance, the superseding indictment alleges only the distribution of nonnarcotic controlled substances to undercover federal agents. Finally, there is an important policy consideration. The government has already produced 70,000 documents, and has indicated that it will shortly produce an additional 600,000 emails. This case presents nuanced questions of knowledge, intent, willfulness and misrepresentations. It requires careful scrutiny of documents. The defendant's detention limits his ability to review the evidence and to communicate with his counsel. The Northeast Ohio Correctional Center ("NEOCC"), where defendant is currently being held, has only computer to which the defendant has limited access. Additionally, the available computer lacks software required to view some of the file types produced by the government to date. He cannot communicate with his counsel through CorrLinks because the NEOCC does not have that capacity. These circumstances currently require his counsel to print out each document on paper and then to drive more than one hour from Pittsburgh to the NEOCC in Ohio to review the evidence with him, which entails a time-consuming and costly exercise. Release on a combination of conditions of bail would permit counsel to effectively prepare with defendant Zuned Sunesra for trial.

   b. The weight of the evidence against the person charged. While the superseding indictment makes broad allegations as to the defendants, it cites no specific evidence

pertaining to the criminal intent of defendant Zuned Sunesra. Nor has the government made a substantial showing of evidence regarding this defendant. Also, there appear to be plausible defects in the legal theories underpinning the superseding indictment. For example, it is not readily clear how a credit card processing company could be a victim of a mail fraud scheme where there is no allegation of financial loss. It is also not immediately clear how website customers who receive the medicine they ordered could be tricked. Finally, the federal statute upon which the "smuggling" allegations depend prohibits only imports into the United States. It does not prohibit exports from India, which is the conduct alleged by superseding indictment. The federal Food, Drug and Cosmetic Act allegations also appear tenuous. 21 U.S.C. §§331(a) and 333(a)(2) require the government to establish an intent to defraud or mislead the FDA. But the superseding indictment alleges no misrepresentations or misstatements to the Agency. The weight of the evidence (and legal theories) against the defendant are not strong.

    c.    The history and characteristics of the person. Defendant Zuned Sunesra is college educated. He has no prior convictions or criminal history. He has no history of drug or alcohol abuse. A cousin has offered to take him into his home for the duration of these proceedings and to facilitate electronic monitoring. The defendant has further offered to pay for this service.

    d.    The nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. The government does not assert any danger to any person or the community.

WHEREFORE, defendant Zuned Sunesra respectfully requests that the Court order him released pending trial on the following conditions:

1. In the event the INS withdraws its detainer, the defendant must reside with his cousin, Sikander Shah, at 1117 Sparrow Way, Breinigsville, PA 18031, subject to electronic monitoring paid for at his expense, and subject to whatever reporting schedule the Probation Office directs;

2. The defendant may not leave the Eastern District of Pennsylvania except to report for proceedings before this Court as directed;

3. The defendant has previously surrendered his passport. He shall not seek the return of his passport except upon order by this Court;

4. The Court advises the defendant as follows:

(A) the Court will immediately issue a warrant for his arrest if he violates a condition of release;

(B) the defendant will be subject to imprisonment for not more than ten years and a fine of $250,000 in addition to any penalty he faces for the crimes alleged in the superseding indictment if he fails to appear before the Court as required. The term of imprisonment for failure to appear as required shall be consecutive to the sentence of imprisonment for any other offense. 18 U.S.C. §3146(a)(1), (b)(1)(A)(i), and (b)(2);

(C) the defendant will be subject to imprisonment for not more than ten years in addition to any penalty he faces for the crimes alleged in the superseding indictment if he commits a felony while released. He will face a term of imprisonment of not more than one year if he commits a misdemeanor. The term of imprisonment for committing an offense while released shall be consecutive to any other sentence of imprisonment. 18 U.S.C. §3147; and

(D) it is a violation of 18 U.S.C. §1503 to intimidate a witness, juror or officer of the Court; it is a violation of 18 U.S.C. §1510 to obstruct a criminal investigation; it is a violation of 18 U.S.C. §1512 to tamper with a witness, victim or informant; and it is a violation of 18 U.S.C. §1513 to retaliate against a witness, victim, or informant.

Respectfully submitted,

/s/ Charles Kelly
Christopher R. Hall, Esquire (PA ID No. 64912)
SAUL EWING LLP
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Tel.: (215) 972-7777
Fax: (215) 972-7725
chall@saul.com

Charles Kelly, Esquire (Pa ID No. 51942)
SAUL EWING LLP
One PPG Place, Suite 3010
Pittsburgh, PA 15222
Tel.: (412) 209-2500
Fax: (412) 209-2590
ckelly@saul.com

*Counsel for the Defendant, Zuned Sunesra*

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Motion for Pretrial Release on Conditions has been served on this 20th day of October, 2014, upon the following parties via the Court's CM/ECF System, and is otherwise available for viewing and downloading on the CM/ECF System:

Eric Rosen, Esq.
United States Attorneys' Office
700 Grant Street, Suite 4000
Pittsburgh, PA 15219
*(Counsel for the United States of America)*

---

Ronald W. Hayward, Esq.
Law Offices of David S. Shrager
429 Forbes Avenue
1310 Allegheny Building
Pittsburgh, PA 15219
*(Counsel for Defendant, Taimur Khan)*

/s/ Charles Kelly
Christopher R. Hall, Esquire (PA ID No. 64912)
SAUL EWING LLP
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Tel.: (215) 972-7777
Fax: (215) 972-7725
chall@saul.com

Charles Kelly, Esquire (Pa ID No. 51942)
SAUL EWING LLP
One PPG Place, Suite 3010
Pittsburgh, PA 15222
Tel.: (412) 209-2500
Fax: (412) 209-2590
ckelly@saul.com

*Counsel for the Defendant, Zuned Sunesra*