**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL No. 14-158 |
| | ) | |
| ZUNED SUNESRA | ) | |

**DEFENDANT ZUNED SUNESRA'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR REVOCATION OF DETENTION ORDER**

Defendant Zuned Sunesra by and through counsel submits this Memorandum of Law in Support of Motion for Revocation of Detention Order:

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Defendant Zuned Sunesra has been detained since his arrest on August 15, 2014. On October 20, 2014, the Defendant moved for pretrial release on conditions. The government opposed by response dated November 3, 2014. The government also filed a Motion to Exclude Time on November 3, 2014 (scheduled for hearing on February 20, 2015) by which the government seeks to exclude at least one year under the Speedy Trial Act pursuant to 18 U.S.C. §3161(h)(7).

On Thursday, November 20, 2014, the parties appeared before Chief Magistrate Judge Maureen P. Kelly for a hearing on Defendant's Motion for Pretrial Release on Conditions. On Monday, November 24, 2014, at a continuance of the detention hearing, Chief Magistrate Judge Kelly issued an Order of Detention Pending Trial on the ground that no condition or combination of conditions would reasonably assure that the defendant would appear as required. (See Doc. # 82, at 2). Notwithstanding this ruling, the Chief Magistrate Judge found that:

1. The case involved primarily the sale of generic prescription medications in India (see Transcript of November 24, 2014 Continuation of Detention Hearing, "Monday Transcript", at 8-9);

2. The case did not involve violence, minors, terrorism, firearms, explosive or destructive devices (id. at 8-9);

3. The government failed to meet its burden of establishing that the Defendant presents a danger to the community (id. at 11);

4. The weight of the evidence is, at most, neutral, and the government will have to overcome significant legal challenges to secure a conviction (id. at 9);

5. The Defendant enjoyed good character overall, good physical and mental condition, and had maintained consistent employment (id. at 9-10).

6. The Defendant had no history of drug or alcohol abuse, no criminal history, no prior failures to appear, and no violations of probation, parole or other release (id. at 11);

7. The Defendant has relatives who reside in Pennsylvania and who are "very credible and genuine on the stand and very willing to serve as custodians and I find them, depending on how I rule, that they would be an acceptable custodian." (id. at 10); and

8. Defendant had offered "thoughtful and creative conditions" for release (id. at 12).

The Chief Magistrate Judge nonetheless denied bail on the grounds that Defendant is facing serious charges with significant potential prison sentences, lacks sufficient ties to the forum, and has access to significant monetary assets to facilitate his fleeing.

On December 4, 2014, the Defendant filed an unopposed motion to extend the time within which to move for revocation the Chief Magistrate Judge's Order for a period of approximately 30 days, which this Court granted the same day.

## II. STANDARDS OF REVIEW

District Courts review detention orders *de novo*. See, e.g., United States v. Delker, 757 F.2d 1390 (3d Cir. 1985); United States v. Gibson, 481 F. Supp. 2d 419, 421 (W.D. Pa. 2007).

The Bail Reform Act creates a presumption in favor of release absent aggravating factors not relevant here. 18 U.S.C §3142(b) and (c) (providing for release on personal recognizance or unsecured appearance bond, or on conditions if release on personal recognizance or unsecured appearance bond will not reasonably assure the appearance of a defendant as required). See, e.g., United States v. Provenzano, 605 F.2d 85, 90 (3d Cir. 1979) ("the Bail Reform Act favors post-trial as well as pre-trial release."). See also United States v. Salerno, 481 U.S. 739, 755, (1987) ("In our

society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."); United States v. Byrd, 969 F.2d 106, 109 (5th Cir. 1992) ("[t]here can be no doubt that [the Bail Reform] Act clearly favors nondetention."). This case does not involve violence, minors, terrorism, firearms, explosives, or controlled substances for which the maximum statutory sentence is greater than ten years. See 18 U.S.C. §3142(f)(1). No aggravating circumstance warranting detention exists. The government's motion rests entirely on the fact that the Defendant is a foreign national who does not reside in the United States.

The Bail Reform Act authorizes detention only if the Court finds "that no condition or combination of conditions will reasonably assure the appearance of the person as required . . . ." 18 U.S.C. §3142(e). The burden of proof rests with government to establish a "serious risk" by a preponderance of the evidence that no condition or combination of conditions will deter the defendant from fleeing. 18 U.S.C. §3142(c), (e)(1), (f)(2)(A). United States v. Himler, 797 F.2d 156, 161 (3d Cir. 1986). Courts may not require defendants to offer evidence sufficient to establish a "guarantee" of appearance. See, e.g., United States v. Fortna, 769 F.2d 243, 250 (5th Cir. 1985) ("standard is *reasonably assure* appearance, not 'guarantee' appearance") (emphasis original); United States v. Portes, 786 F.2d 758, 764 (7th Cir. 1985) (accord).

The Bail Reform Act directs Courts to weigh the following factors when deciding whether a condition or combination of conditions will reasonably assure the appearance of a defendant:

a. the nature and circumstances of the offense;

b. the weight of the evidence;

c. the history and characteristics of the person, including: (i) character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history of drug or alcohol abuse, criminal history, record concerning appearance at court proceedings; and (ii) whether, at the time of the offense, the person was on probation, on parole, or on other release; and

d. the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. §3142(g).

## III. LEGAL ARGUMENT

Chief Magistrate Judge Kelly erred as a matter of law when she ordered the Defendant detained on the sole basis that the Defendant has been charged with serious offenses, has the financial means to flee, and lacks ties to the community. These grounds are insufficient as a matter of law when coupled with the fact that the Chief Magistrate Judge also found that the weight of the evidence was neutral at best and that the defense raised substantial legal issues. This principle applies with special force in the context of an action to enforce health and safety regulations normally left to the civil and administrative courts.

### A. Factors Considered by the Chief Magistrate Judge

#### 1. Nature and Circumstances of the Offense Charged

The Chief Magistrate Judge found that this case primarily involves the sale of generic prescription medications in India. This is not a case of violence, involving minors, terrorism, firearms, explosive or destructive devices, or even controlled substances (see Monday Transcript, at 8-9). The Chief Magistrate Judge further held, however, that Defendant faces "very serious charges . . . and there is a significant prison term that can come with that if [he is] convicted of the charges as they are charged." (Monday Transcript, at 12). The Chief Magistrate Judge ultimately relied upon the seriousness of the charges as a basis for detention. (Id.).

The government may not rest a motion for detention on the mere allegation of a serious crime and potentially long sentence: "we have required more than evidence of the commission of a serious crime and the fact of a potentially long sentence to support a finding of risk of flight." United States v. Friedman, 837 F.2d 48, 50 (2d Cir. 1988). This precept is especially true where, as in this case, the Chief Magistrate Judge found that the evidence was neutral, at best.

Therefore, the nature and circumstances of the offenses charged weigh in favor of pretrial release and are not sufficient to support a risk of flight in this case.

2. Weight of the Evidence

As noted above, the Chief Magistrate Judge found that the weight of the evidence is, at most, neutral, and that the government has significant legal challenges to overcome: "I also believe there are significant legal issues that Judge Bissoon is going to have to decide at the pretrial and trial stages of this case that will, in fact, determine what the weight of the evidence is. I believe there's going to be significant challenges back and forth between the parties as there have been already . . . So, the issue of the weight of the evidence I consider a neutral factor . . . ." (Monday Transcript, at 9). In sum, the Chief Magistrate Judge found that the government will face serious impediments to obtaining an actual conviction of Defendant. The deficiencies in the government's case include:

a. The government consistently overstated the probative value of its exhibits and evidence. For example, although the government purported to introduce an exhibit to establish the Defendant's knowledge that he was violating FDA regulations, the notice to the Defendant was buried on the twenty-third page of a twenty-four page e-mail that was forwarded to the Defendant two years later (see Transcript of November 20, 2014 Detention Hearing, "Thursday Transcript", at 28-29, 63, 117);

b. The government must establish specific intent to defraud the FDA, but has not. 21 U.S.C. §333(a)(2). The government's witness at the detention hearing admitted that no evidence of specific intent existed (Thursday Transcript, at 71); (Doc. #79, Defendant's Response to Government's Supplement, at ¶6-9);

c. The government cannot establish a scheme to defraud or deprive any person of property to support mail fraud. The websites of the businesses involved accurately described the medications purchased, and properly disclosed the need for a prescription (see Thursday Transcript, at 74-78) (see also Doc. #60, Defendant's Reply to Government Response to Motion for Release, at ¶12; Doc. #79, Defendant's Response to Government's Supplement, at ¶8); and

d. The government cannot establish that an individual who exports medications from a foreign county engages in an "importation" into the United States (a prerequisite for an offense under the FDCA).

In sum, and as the Chief Magistrate Judge noted, the weight of the evidence is weak.

3. History and Characteristics of the Person

*a. Generally*

The Chief Magistrate Judge made the following findings at the detention hearing regarding the history and characteristics of Defendant (Monday Transcript, at 9-11):

a. Defendant presented credible evidence at the detention hearing "that he has always been a good man";

b. Defendant is in good physical and mental condition;

c. Defendant has maintained consistent employment;

d. Defendant has no history of drug or alcohol abuse;

e. Defendant has no criminal history, or other negative past conduct;

f. Defendant has never not appeared at court proceedings; and

g. Defendant did not violate probation, parole or other release.

*b. Ties to the Community*

Although the Defendant lacks direct ties to the Western District of Pennsylvania, he does have family members in Allentown, Pennsylvania who have known him since birth and have offered to open their home to him if the Court grants pretrial release on conditions. The Chief Magistrate Judge described Defendant's relatives as "very genuine and very willing to help and assist Mr. Sunesra . . . ." (Monday Transcript, at 5). Furthermore, the Chief Magistrate Judge stated that Defendant's relatives in the Eastern District of Pennsylvania are "very credible and genuine on the stand and very willing to serve as custodians and I find them, depending on how I rule, that they would be an acceptable custodian." (Id. at 10).

c. *Defendant's Financial Resources*

The Chief Magistrate Judge found that the Defendant has significant monetary assets, or has access to assets to facilitate flight (Monday Transcript, at 12). This finding, however, is not supported by the record and was contested at the hearing:

> [Assistant United States Attorney] MR. ROSEN: Now let's talk about net worth because there was a statement in the Defendant's brief, we believe highly inaccurate, that he is worth only $25,000. He's produced no evidence of that.
>
> THE COURT: But you haven't produced anything to me that he's worth the $100,000 that you refer to in your brief.
>
> MR. ROSEN: The ten million that's in the pretrial services report.
>
> THE COURT: Or the ten million. Aside from what's in the pretrial services report, you haven't given me anything else as to his individual net worth.

(Thursday Transcript, at 108). The government has the burden to establish risk of flight by a preponderance of the evidence. The government failed to produce evidence of the Defendant's personal net worth at the Detention Hearing, as the Chief Magistrate Judge recognized. The government, therefore, failed to meet its burden.

In any event, evidence that a defendant or a defendant's family has financial resources does not establish that conditions or a combination of conditions will not assure his appearance as required. The mere opportunity or ability to flee does not mean a risk of flight exists and that detention is warranted. United States v. Himler, 797 F.2d 156, 162 (3d Cir. 1986); Virgin Islands v. Leycock, 678 F.2d 467, 469 (3d Cir. 1982) ("If the opportunity for flight were a reason to deny bail, virtually any defendant living in an area served by interstate public transportation could be denied bail for that reason."). Even if the Defendant had the financial means to fly, the government failed to produce evidence of a motive, ability, or proclivity to flee. Indeed, the government has confiscated the Defendant's passport and the Defendant has agreed to notify the Indian Embassy

jointly with the United States that he may not obtain substitute papers. The Chief Magistrate Judge also found that the evidence was neutral at best. The fair inference from this finding is that the Defendant would stay to face the charges against him—not that he would flee. Finally, the Defendant works in the arena of international business and must travel extensively for that purpose. Fugitive status from legal authorities in the United States would eviscerate his ability to conduct business outside of India for the balance of his life. Again, the fair inferences from the evidence all point to appearance as required, and not flight.

The government has failed to meet its burden of establishing that the Defendant has the means or motivation to flee. Instead, Defendant's background and characteristics support release. The conditions the Defendant has offered for release will reasonably assure his appearance.

4. Danger to Community

The Chief Magistrate Judge correctly found that Defendant is *not* a danger to the community (Monday Transcript, at 11). In fact, the government agreed that it was not even arguing the Defendant presents a danger to the community generally (Thursday Transcript, at 6). Instead, the government attempted to introduce a handwritten note from the Defendant to co-defendant Taimur Khan as evidence of potential witness intimidation (see Thursday Transcript, at 48-51). However, at the Detention Hearing, a Special Agent called by the government admitted that the co-defendant never indicated he felt threatened by the note (Thursday Transcript, at 85-86), and the Chief Magistrate Judge concluded that the handwritten note did not establish a danger to anyone. (Monday Transcript, at 11).

### B. Legal Analysis: The Factors Cited by the Chief Magistrate Judge Do Not Support Detention as a Matter of Law.

The factors found by the Chief Magistrate Judge in this case--serious charges, lack of family ties, and personal finances--are insufficient to require pretrial detention, especially in light of the conditions for release offered by Defendant.

In United States v. Zhang, No. 12-498, 2014 WL 5285928 (E.D. Pa. Oct. 16, 2014), the Eastern District of Pennsylvania ordered release under similar circumstances. Zhang was accused of the theft of sensitive information and company documents from his employer, the Vanguard Group. The Eastern District noted that the nature and circumstances of the crime, and weight of the evidence, could weigh in favor of detention. Additionally, the court found that "defendant has very few community contacts, is a citizen of a foreign county with no extradition treaty with the United States, and likely retains substantial assets," along with a history of sending substantial sums of money to China in the past. Id. at *3-4. The court nonetheless determined that—despite the existence of substantial assets, ties to China and lack of ties to the forum—conditions could be crafted to reasonably assure appearance. Id. at *6. The Eastern District explained: "The defendant continues to present a substantial risk of nonappearance. However, the Bail Reform Act 'does not require that the risk be zero, but that conditions imposed 'reasonably assure' appearance.'" Zhang, 2014 WL 5285928, at *6. See also United States v. Dorsey, No. 11-158, 2011 WL 4383101, at *4 (W.D. Pa. Sept. 20, 2011) (Schwab, J.) (noting that risk of flight can be "effectively eliminated (or greatly reduced) by the condition of release requiring electronic monitoring or home detention").

Other cases within sister courts of the Third Circuit have also ordered release under circumstances that present a greater risk of flight than those here. See, e.g., United States v. Fontanez, No. 96-103-3, 1996 WL 72572 (E.D. Pa. Feb. 16, 1996) (crafting conditions for release despite significant charges, access to large quantities of cocaine and potential to traffic the same to raise assets, and ties to Puerto Rico); United States v. Stewart, No. 96-583, 1997 WL 325784 (E.D.

Pa. June 6, 1997) (crafting conditions for release despite previous evidence of flight attempts, significant assets, and residence in California). See also United States v. Hansen, 108 Fed. App'x 331 (6th Cir. 2004) (permitting resident of Denmark to return to home country, despite charges of bulk cash smuggling); United States v. Dreier, 596 F. Supp. 2d 831 (S.D. N.Y. 2009) (permitting release upon condition of private security guard with ability to use force to thwart escape where defendant accused of "colossal criminality," potential theft of $400 million by "master of deceit" with a motive to flee that is "palpable" and strained family ties).

Therefore, the case law makes clear that significant charges, an absence of local ties and financial assets alone do not support detention.

### C. A Combination of Conditions will Reasonably Assure the Defendant's Appearance as Required.

Defendant Sunesra offered conditions for release to reasonably assure his appearance. The Chief Magistrate Judge even praised the defense for the "thoughtful and creative conditions" it proposed (Monday Transcript, at 12).

Defendant offered the following conditions (see Monday Transcript, at 11-12):

a. The government may retain Defendant's passport and valid visa documentation, leaving him without a lawful means to leave the United States;

b. The Defendant's cousin, near Allentown, Pennsylvania, will provide housing to Defendant during the proceedings. Defendant's cousin's family is of modest means, but has nonetheless offered to pledge all of the equity in their home, approximately $22,000, along with all of the $17,600 that his cousin has available in cash (Thursday Transcript, at 94-95). Defendant's relatives also understand that flight by the Defendant might jeopardize their hopes for United States citizenship, and volunteered to alert authorities of any flight attempts (id. at 95-96, 97-98);

c. In the alternative, Defendant could rent an apartment in Pittsburgh, Pennsylvania;

d. Defendant would consent to electronic monitoring via ankle bracelet;

e. Defendant would report, as directed by the United States Probation Office;

f. Defendant would hire a security guard company of the government's choosing to monitor him around-the-clock;

g. Defendant would post four properties owned by the Sunesra family in the United States, free and clear, with an aggregate market value in excess of $500,000.00;

h. Defendant's family could, as a substitute to real property, post $250,000.00 as cash bond;

i. Defendant would sign a non-extradition waiver, which would prevent him from challenging extradition proceedings if he fled to a foreign country; and

j. Defendant would assist the government in alerting the Indian Embassy regarding his travel restrictions, along with Interpol, the Department of Homeland Security / Transportation Security Administration, or any other relevant agencies.

Flight under these conditions would require the Defendant to cut-off his electronic monitoring bracelet; evade a private security company chosen by the government; forfeit significant family assets posted as bond (and potentially harm his family's hopes of citizenship[1]); travel to an Indian Embassy or Consulate (hours away in Washington, D.C. or New York City) or corrupt a private aviation company to fly him illegally to a foreign country with which the United States has no mutual legal assistance treaty--all while evading domestic and international authorities who have been previously alerted of his travel restrictions and who were notified of his flight at the moment he severed his electronic monitoring bracelet. This scenario is fanciful, at best, and finds no support either in the evidence or logic.

Although no set of conditions can absolutely guarantee appearance, the above conditions provide a "reasonable" assurance the Defendant will appear.

**D. A Fair Trial in this Case Necessitates Pretrial Release**

The government has requested additional time to prepare for trial, and to exclude time under the Speedy Trial Act, because it asserts the case is complex and involves hundreds of thousands of documents (spanning millions of individual pages). (See Government's Motion to Exclude Time,

[1] The Chief Magistrate Judge found that Defendant's relatives, the Shahs, represented acceptable custodians if pretrial release was ultimately ordered (Monday Transcript, at 10). In fact, the Shahs were willing to place their own United States citizenship on the line for Defendant in order to further secure his release (see Thursday Transcript, at 98).

Doc. #62). The Defendant is being held, however, in the Northeast Ohio Correctional Center ("NEOCC"), which provides the Defendant with only limited access to an outdated computer that cannot even open the file types produced by the government in the voluminous electronic evidence. The NEOCC limits visiting hours, moreover, and limits the amount of paper documents that may be given to an inmate. The NEOCC does not even provide inmates with a means of electronic communication. The CorrLinks system, which permits pretrial detainees in other federal facilities to communicate electronically with counsel, is not available, and the NEOCC limits secure telephone communications. Defendant's counsel is instead required to travel in excess of one hour, one way to the NEOCC from Pittsburgh, Pennsylvania for in-person meetings, an inefficient process which is quickly dissipating valuable defense resources, and which, in any event, fails to address the Defendant's inability to participate in the review of the electronic evidence.

The detention of the Defendant combined with the delay of trial indefinitely will hinder Defendant's access to counsel and ability to prepare for his day in court. Pretrial detention, by itself, impinges a "crucial liberty interest," United States v. Suppa, 799 F.2d 115, 120 (3d Cir. 1986), and represents a "grave invasion of the most fundamental of all personal liberties that occurs when preventive detention is ordered . . . ." United States v. Perry, 788 F.2d 100, 114 (3d Cir. 1986). The likely length of pretrial detention (already nearing five months, with years of delays requested by the government), when coupled with the impacts on Defendant's right to counsel, present serious constitutional issues. See United States v. Vastola, 652 F. Supp. 1446, 1447 (D. N.J. 1987) (where, even with a 117 count indictment involving 21 defendants across several states, including counts under Controlled Substances Act, the district court ordered pretrial release because the defendant already served 3 months in prison, and trial would not be concluded for at least another year). Therefore, the Defendant's constitutional rights further require pretrial release.

## IV. CONCLUSION

WHEREFORE, for the reasons set forth above, Defendant Zuned Sunesra respectfully requests that this Court revoke the Chief Magistrate Judge's Detention Order, and grant him pretrial release on conditions.

Respectfully submitted,

/s/ Charles Kelly
Christopher R. Hall, Esquire (PA ID No. 64912)
SAUL EWING LLP
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Tel.: (215) 972-7777
Fax: (215) 972-7725
chall@saul.com

Charles Kelly, Esquire (Pa ID No. 51942)
Michael J. Joyce, Esquire (PA ID No. 311303)
SAUL EWING LLP
One PPG Place, Suite 3010
Pittsburgh, PA 15222
Tel.: (412) 209-2500
Fax: (412) 209-2590
ckelly@saul.com
mjoyce@saul.com

*Counsel for the Defendant*
*Zuned Sunesra*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of this Memorandum of Law in Support of Motion for Revocation of Detention Hearing has been served on this 7th day of January, 2015, upon the following parties via the Court's CM/ECF System, and is otherwise available for viewing and downloading on the CM/ECF System:

Eric Rosen, Esq.
Conor Lamb, Esq.
United States Attorneys' Office
700 Grant Street, Suite 4000
Pittsburgh, PA 15219
*(Counsel for the United States of America)*
---
Thomas Livingston, Esq.
Federal Public Defender
Western District of Pennsylvania
1500 Liberty Center
1001 Liberty Avenue
Pittsburgh, PA 15222-3714
*(Counsel for Defendant, Taimur Khan)*

/s/ Charles Kelly
Christopher R. Hall, Esquire (PA ID No. 64912)
SAUL EWING LLP
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Tel.: (215) 972-7777
Fax: (215) 972-7725
chall@saul.com

Charles Kelly, Esquire (Pa ID No. 51942)
SAUL EWING LLP
One PPG Place, Suite 3010
Pittsburgh, PA 15222
Tel.: (412) 209-2500
Fax: (412) 209-2590
ckelly@saul.com

*Counsel for the Defendant*
*Zuned Sunesra*